UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KENNETH LEE**      CIVIL ACTION

**VERSUS**      NO. 19-10064

**ROBERT TANNER, ET AL.**      SECTION: "S"(3)

## REPORT AND RECOMMENDATION

Plaintiff, Kenneth Lee, a state prisoner incarcerated at the Rayburn Correctional Center ("RCC"), filed this *pro se* civil action pursuant to 42 U.S.C. § 1983. He sued Warden Robert Tanner, Deputy Wardens Keith Bickham and Beverly Kelly, Dr. Robert Cleveland, Emergency Medical Technician Laura Buckley, and other unidentified "Medical Nursing Officials." In this lawsuit, plaintiff claimed that the defendants were deliberately indifferent to his serious medical needs.

After ordering production of plaintiff's medical and administrative grievance records,[1] the Court held a Spears hearing on July 9, 2019.[2] At that hearing, plaintiff testified that he is required to use a catheter.[3] Although he was originally inserting the catheter himself, the doctor ordered

---

[1] Those records were filed into this federal record at Rec. Doc. 9, and copies were provided to plaintiff for his use in this proceeding.

[2] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

[3] Plaintiff's medical records from the University Medical Center Urology Clinic from April 25, 2019, state:

> Kenneth Lee is a 51 y.o. male who presents for f/u neurogenic bladder. Patient has a history of stroke around 2010, voiding dysfunction since that time. He was started on CIC [Clean Intermittent Catheterization] around that time, which became progressively more difficult over the years, and ultimately required SPT [Suprapubic Tube] Placement in July 2017. 7/13/17 EPA [Excision and Primary Anastomosis] urethroplasty was performed. He had a RUG [Retrograde Urethrogram] and this showed no extravasation on 7/25 so foley per penis was removed. Cysto in clinic on 9/27 showed no residual stricture disease, however patient wished to continue SPT at that time.

that medical personnel begin performing that task. However, he complained that the prison's medical personnel did not change the catheter and bandages or supply him with a razor to shave the necessary area in a timely manner.[4]

Plaintiff also testified that he must use orthopedic braces because he was "born crippled." When he reported that his knee braces were "ripping apart," Dr. Robert Cleveland and Emergency Medical Technician Laura Buckley told plaintiff simply to have someone stitch them back together. Although he did as instructed, he opined that the braces remained practically unusable because the thread cut into his knees. He contended that he should have been provided with new braces. He similarly complained that he was denied ankle braces.

Pursuant to its screening authority, the Court previously dismissed the official-capacity claims against all defendants, as well as the individual-capacity claims against Warden Robert Tanner, Deputy Warden Keith Bickham, and the unidentified "Medical Nursing Officials."[5] The remaining defendants, Deputy Warden Beverly Kelly, Dr. Robert Cleveland, and Emergency Medical Technician Laura Buckley, have now filed a motion to dismiss the individual-capacity claims against them pursuant the Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6]

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. The United States Fifth Circuit Court of Appeals has held:

> To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. When … a qualified immunity defense is asserted in a motion to dismiss, the district court must – as always – do no more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone.

---

[4] The doctor ordered that the catheter be changed every thirty days; however, sometimes plaintiff waited up to two months to have it changed.
[5] Rec. Docs. 10 and 11; Lee v. Tanner, Civ. Action No. 19-10064, 2019 WL 4889867 (E.D. La. Sept. 6, 2019), adopted, 2019 WL 4881970 (E.D. La. Oct. 3, 2019). The Court granted plaintiff leave to file an amended complaint to properly name the individual nurses who allegedly were deliberately indifferent to his serious medical needs, but no amended complaint was filed. Rec. Doc. 12.
[6] Rec. Doc. 17.

> A plaintiff is required by his pleadings to state facts which, if proved, would defeat a claim of immunity. The purpose of requiring such allegations is, of course, to permit the trial court, and our court on review, if necessary, to implement a qualified immunity defense at the earliest possible stage of litigation. As is well-established, qualified immunity means immunity from having to stand trial, not simply immunity from monetary liability.

Westfall v. Luna, 903 F.3d 534, 542 (5th Cir. 2018) (citations, quotation marks, brackets, and ellipsis omitted). The Fifth Circuit has further explained:

> The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. It is an affirmative defense; once properly raised by the defendant, the "plaintiff has the burden to negate the assertion of qualified immunity. To establish that qualified immunity does not apply, [the plaintiff] must prove [the defendant] (1) violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.

King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016) (citations, quotation marks, and brackets omitted). Qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In their motion to dismiss, the defendants argue that plaintiff's allegations are insufficient to state a plausible constitutional claim for the denial of medical care and that they are therefore entitled to qualified immunity. Plaintiff was ordered to file a response to that motion on or before February 5, 2020,[7] but he filed no response or opposition of any kind. For the following reasons, the undersigned United States Magistrate Judge finds that the defendants' motion has merit and therefore recommends that their unopposed motion be granted.

As noted, plaintiff claimed that the medical staff failed to follow the doctor's orders regarding his catheter and to provide him with the support and care it required. He also claimed that he was denied replacement orthopedic braces. For their part, the defendants apparently do not dispute those allegations. They acknowledge that, at least occasionally, plaintiff's catheter was

---

[7] Rec. Doc. 18.

not changed within the prescribed thirty-day period.[8] They further acknowledge that plaintiff was not provided with the new orthopedic braces he requested and was instead instructed to have his existing ones repaired.[9] In essence, they argue that plaintiff's medical care, even if arguably subpar in those respects, nevertheless did not violate federal constitutional minimum standards. For the following reasons, the Court agrees.

As the defendants note, a prisoner's federal constitutional right to medical care is a strictly limited one. Specifically, that right is violated *only* if the prisoner's "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). In the instant case, the defendants do not appear to dispute that plaintiff's medical needs were serious.

However, they argue that those needs simply were not met with "deliberate indifference." It is true that "[d]eliberate indifference is an extremely high standard to meet," requiring a plaintiff to "show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks omitted). In other words, "[d]eliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."

---

[8] "[T]he medical record shows that Plaintiff has consistently received changes to his catheter every four *to six weeks*, with most occurring every month." Rec. Doc. 17-1, p. 9 (emphasis added).
[9] Id.

McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); accord Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). Therefore, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999).

Here, the fact that plaintiff's medical care may have been subpar is not, in and of itself, indicative of deliberate indifference. On the contrary, it is clear that a prisoner's medical care need not be "the best money could buy," see Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992), or meet the highest standard of care, Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."). Further, although allegations of medical malpractice or negligence may suffice to support a *state-law claim* actionable in the state courts, they are insufficient to state a *federal constitutional claim* cognizable in federal court. Estelle v. Gamble, 429 U.S. 97, 107 (1976) (noting that the proper forum for a claim of "medical malpractice" is state court); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) ("[N]egligent medical care does not constitute a valid section 1983 claim."); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004) ("Simple medical malpractice or negligence does not constitute a violation of an inmate's constitutional rights. It is, instead, a violation of a tort duty of care and must be pursued in state court."). Simply put: "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Under those rigorous standards, plaintiff's federal constitutional claims obviously fail.

Regarding his claim concerning the catheter care, plaintiff did not allege that his catheter went unchanged; rather, he alleged that the changes were not always performed within thirty days as prescribed. Therefore, his allegation was not one of *denial* of medical care – it was instead one of only *delay* in receipt of medical care. However, a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, *which results in substantial harm*." Mendoza, 989 F.2d at 195 (emphasis added). Because plaintiff failed to allege that substantial harm resulted from the delayed catheter care in the instant case, this claim fails. Cf. McGiffin v. Curry, 402 F. App'x 883, 885 (5th Cir. 2010) (holding that prisoner's claim that there was a "lengthy delay" in his receipt of a catheter failed absent a showing that "the delay resulted in substantial harm").

Plaintiff's claim regarding the orthopedic braces fares no better. In lieu of providing new braces, the defendants advised plaintiff to have his existing braces repaired. Although he disagreed with that remedy, allegations concerning mere disagreements regarding the appropriateness of medical care are insufficient to state a claim of deliberate indifference. See, e.g., Gracia Ledezma v. United States, 382 F. App'x 381, 383 (5th Cir. 2010); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

In the end, while plaintiff would have preferred new braces, especially since the repaired equipment was uncomfortable, the defendants' remedy did not violate constitutional protections. Again, as already explained, the defendants were not required to provide the best or even the most appropriate solution to plaintiff's medical needs; the federal constitution required only that the defendants not be deliberately indifferent to those needs. While expressing no opinion concerning the morality of the defendants' decision requiring plaintiff to use uncomfortable, albeit repaired,

orthopedic braces rather to provide him with new ones, the Court finds that the decision simply did not cross that unconstitutional line.

## RECOMMENDATION

It is therefore **RECOMMENDED** the unopposed motion to dismiss filed by Deputy Warden Beverly Kelly, Dr. Robert Cleveland, and Emergency Medical Technician Laura Buckley be **GRANTED** and that the remaining individual-capacity claims against those defendants be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __30th__ day of March, 2020.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**